**Helen D. SWIETLOWICH, Administratrix of the Estate of Joseph A. Swietlowich, Deceased and Helen D. Swietlowich, in her own right, Appellant,**

v.

**COUNTY OF BUCKS and Township of Bristol and Harry Merker and Sgt. Stanley Martin and Sgt. Walter Hughes and Patrolman H. J. McDonough, Appellees.**

No. 79–1243.

United States Court of Appeals, Third Circuit.

Argued Oct. 11, 1979.

Decided Dec. 5, 1979.

Ralph E. Gilbert, Curtin & Heefner, Morrisville, Pa., Dean F. Murtagh, LaBrum & Doak, Philadelphia, Pa., Leonard B. Sokolove, Bristol, Pa., for appellee Township of Bristol.

Donald M. McCoy, Langhorne, Pa., for appellee Harry Merker.

Robert A. Godwin (argued), Newtown, Pa., for appellees Martin, Hughes, and McDonough.

Harry Lore (argued), Martin Heller, Philadelphia, Pa., for appellant.

Peter N. Harrison, First Asst. County Sol., Bucks County, Doylestown, Pa., for appellee County of Bucks.

Before ADAMS, ROSENN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The plaintiff in this civil rights case alleges that compliance by police officers with their duty to look in on prisoners periodically would have prevented her husband's suicide in a jail cell. Following instructions that did not adequately explain that the limitations period may have been suspended if police assertions of vigilance

were untrue, the jury found the suit to be time-barred. Because the statute may be tolled for those who ask not and are deceived, as well as for those who are misled after asking, we remand for a new trial.

Plaintiff's decedent, Joseph A. Swietlowich, was arrested at about 2:20 a.m. on February 18, 1973 and charged with operating a motor vehicle while intoxicated. He was taken to the Bristol Township Police Station, Bucks County, Pennsylvania, and lodged in a detention cell. Some three hours later, he was found hanged in his cell, an apparent suicide victim.

The plaintiff, Swietlowich's widow, took no legal action until after a newspaper article published some four years later asserted that the police had falsified records of decedent's confinement. Suit was filed alleging that rights guaranteed by federal civil rights statutes and directly by the Constitution had been violated by the decedent's false arrest and wrongful death, as well as by a conspiracy to deny plaintiff her right to sue on these rights by concealing the circumstances. The federal claims were based on 42 U.S.C. §§ 1983, 1985, 1986, and directly under the fifth, eighth, and fourteenth amendments. In addition, plaintiff alleged pendent state claims for negligence. Named as defendants were the county, the township, and four police officers. The county was dismissed as a defendant at an early stage in the litigation and verdicts were directed for two of the defendants.

Soon after suit began, the defendants filed a motion to dismiss based on the statute of limitations. At an evidentiary hearing, although both parties were given the opportunity, only the plaintiff presented evidence, and, thereafter, the motion was denied.

At trial, the plaintiff testified that the police came to her home shortly after her husband's death and said that officers had checked him periodically in his cell. About a week later, the plaintiff and her son went to the police station where they were told that the decedent had been drinking before his arrest, that the officers had looked in on him every half hour or so in his cell, and

that they had done everything that they could. As a result of these assurances, plaintiff said she did not pursue any investigation of the death, and only after reading the newspaper article did she believe it necessary to consult a lawyer.

According to testimony at the trial, additions or alterations to the cell check log were made by various officers following discovery of the suicide. The evidence was conflicting as to whether the entries were designed to cover up for failure to make notations in the log when the cell checks were made or to have it appear that the inspections had taken place when, in fact, they had not.

The judge directed verdicts for defendant police officers McDonough and Hughes because of lack of evidence to establish liability. McDonough had arrested the decedent and brought him to the station. This officer also found the decedent hanging in the cell and initialed the log indicating the time when the body was discovered. Hughes, the road supervisor in charge of police at the time, was not shown to have had any connection with the arrest, incarceration, or entries in the log.

The case went to the jury as to the liability of Bristol Township, Police Chief Merker, who came to the station after the death and supervised the log entries, and Sergeant Martin, the shift commander in charge of the station on the night in question. During its deliberations, the jury asked for further instructions on four occasions, two of them referring specifically to the statute of limitations, before returning with their answers to special interrogatories finding that the police records had been fraudulently altered and that the suit was "barred by the statute of limitations." Judgment was accordingly entered for the remaining defendants and plaintiff's motion for a new trial was denied.

The plaintiff contends that the court's charge on the statute of limitations was inadequate and that the deficiency was accentuated when the court did not fully answer the jury's request for additional instructions. The interrogatories, submitted

despite plaintiff's objections that their language did not cover all issues, are also said to have been confusing rather than helpful. In addition, plaintiff argues that the judge's ruling on the statute of limitations in denying the motion to dismiss foreclosed any further consideration of that question.

■ Since the Civil Rights Acts contain no statute of limitations, we look to that of the state in which the incident occurred. *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974) (en banc). In Pennsylvania, the limitations at the time of the occurrence were one year for false arrest, one year for wrongful death, and two years for the survival action.

■ When borrowing a state period of limitations in a civil rights case, a federal court will also adopt the state's exceptions thereto as long as policies underlying the federal cause of action are not undermined. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464–65, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Whenever suit is filed after the limitations period, as it had been in this case, the burden is on the plaintiff to establish that the statute has been tolled.

■ Pennsylvania courts hold that the limitation period does not commence in cases of fraudulent concealment until the time of discovery or the date when with reasonable diligence one would have been led to discovery. As the state supreme court phrased it, "If by any act of concealment or deceit, whether before, or at the same time or after the act is committed, the wrongdoer hides from the innocent party the facts which would put him upon inquiry, the statute does not begin to run." *Deemer v. Weaver*, 324 Pa. 85, 88, 187 A. 215, 216 (1936). The fraud involved need not include an intent to deceive; unintentional deception will suffice and it is the effect upon the plaintiff, not the intention of the defendant, that is pertinent. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A.2d 473, 477 (1964). *See also Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979).

■ The issue in this case is whether the statute was tolled by police misrepresentation of diligence in caring for their prisoner. That question, however, was obscured by focusing attention on the falsification in the log rather than on the misleading statements made to the plaintiff shortly after the death occurred.

■ It appears to be undisputed that the plaintiff had no knowledge of the alteration of the cell check log until some four years later, but there is no evidence that she ever asked to see it or even knew of its existence. In these circumstances it is obvious that the alteration of records of which the plaintiff was completely oblivious in no way misled her. Plaintiff argues that she would have been deceived if she had asked to see the log or if she had actually seen it. That, however, is not the test. The plaintiff must establish that she relied to her detriment on wrongful acts of the defendant before she can invoke the ban of estoppel. *Nesbitt v. Erie Coach Co., supra* at 95–96, 204 A.2d at 476. If what the defendant did had not the slightest influence on the plaintiff, then she has no ground to invoke that conduct as the basis for an estoppel and the defendants' wrongful act in altering the log was irrelevant.

The misapprehension about the relevancy of the log alteration that the district court first articulated in its denial of the defendants' motion to dismiss resurfaced several times during the litigation, particularly at its conclusion. In his charge, the trial judge stated that if there had been no material alteration of the police records, then the case would be barred by the statute of limitations. He then said that fraudulent concealment of the facts would toll the statute. As the court explained it, the statute of limitations "begins to run from the date of the discovery of the *alteration* or from the date which [*sic*] the plaintiff should have made reasonable inquiry and with due diligence would have discovered the *alteration*." (Emphasis supplied.) In response to a question from the jury asking whether the "date of the event [is] the date of death," the judge responded, "The date of the event is the date when the actual

event occurred. The other part of it is [that] the date of the event is when, in exercising due diligence, the plaintiff should or would have known of the alleged *falsification*." (Emphasis supplied.) Defense counsel objected to that response.

In fairness to the trial judge, we observe that counsel apparently seemed uncertain of what the jury was to decide. But in the pleadings and in the closing arguments to the jury, however, the correct theory comes glimmering through: the assurances made by the police in the week following the death were circumstances on which plaintiff based her contention that she was misled to her detriment.

■ To establish her case, plaintiff had to prove that she delayed bringing her suit because she reasonably believed that the police officers' conduct was not actionable based on their false statements of adequate inspections and of having done all that they could. In that event the jury could have found that the requisite deception for tolling was established. The contents of the log could have been helpful to the extent that, if accurate, they verified the assertion that the required periodic checks had been made, or if false, they cast doubt on the police officers' contention of vigilance. The instructions, however, did not refer to the material in the log in this context. The discovery per se of the alteration in the log was material only in fixing the time at which the plaintiff contends she was first put on notice that she had been misled.

The charge failed to direct the jury's attention to the critical questions—was the plaintiff reasonably misled by the police statements in 1973? When did events occur that would have required a reasonable person to eschew the reliance on police assurances? Only at this juncture did knowledge of the log tampering become material.

■ As we observed in *Ayoub v. Spencer*, 550 F.2d 164 (3d Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977), although a comprehensive review of the evidence is not required, the failure of the court's instructions to relate the parties' contentions to the law leaves the jury without guide or compass to aid in rationally reaching a decision and requires the grant of a new trial.[1]

■ Furthermore, the interrogatories to the jury should have focused attention on specific factual premises and inferences that would lead to a conclusion that the suit was or was not barred. The first question —"was there a fraudulent and material alteration of the police log"—did direct the jurors' inquiry to a factual issue. The second query—"is the suit barred by the statute of limitations"—was a more general one of mixed law and fact. In addition, the sequence of the questions tended to divert the jurors' thinking away from the issue of whether the police assurances acted to toll the statute and made the alteration of the log more significant than other factual matters bearing on the limitations issue. On retrial we suggest that interrogatories be directed more precisely to the factual disputes affecting the tolling problem.

We reject plaintiff's contention that the judge's denial of the defendants' motion raising the statute of limitations became the law of the case and removed that issue from jury consideration. At the evidentiary hearing, the plaintiff related essentially the same testimony she later presented at trial. Although the defendants did not produce any evidence, they did cross-examine plaintiff and her witnesses. The district judge wrote that "the alteration of the logs coupled with the lack of any information on which the plaintiff might have founded a claim for damages led plaintiff, *as a matter of law,* to relax her vigilance and to deviate from her right of inquiry." (Emphasis supplied.)

---

1. Counsel also complained that the judge's charge was delivered so rapidly that the jury could not comprehend it. We cannot pass on that point on the present record. That contention, however, is another argument for the use of videotaping trial proceedings so that an ap- pellate court can properly pass on a motion of this nature. *See also United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 679 n.3 (3d Cir. 1976), *cert. denied*, 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

Plaintiff argues that this finding precluded any further contest over the statute of limitations. In denying plaintiff's motion for a new trial, the trial judge explained, however, that the evidentiary hearing was held simply to establish whether the plaintiff had any evidence to show that the statute had been tolled and that in ruling on the motion he viewed the evidence in the light most favorable to her. This, however, is the first time that such an explanation appears in the record.

■ We agree that the prior holding, though it contained the phrase "as a matter of law," did not foreclose the defendants' right to have the factual issues decided by the jury. The law of the case doctrine does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling. In circumstances such as these, a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result. *See Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

■ Our search of the record, however, fails to reveal when the trial judge informed the parties that evidence on the statute of limitations would be submitted to the jury. The pretrial conference was not reported nor was any order issued at that time clarifying the matters to be raised at trial. A review of the transcript shows that there were a number of conferences between the court and counsel for all parties that were not reported either verbatim or in substance. We do not know, therefore, when the parties may have been told that the preliminary ruling did not remove the issue from the jury. If a trial judge decides to change or explain an earlier ruling, he should state his reasons on the record. He must also take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling. We are satisfied that the plaintiff suffered no prejudice at trial here since she was fully prepared to meet the limitations defense.

■ Since the case must be remanded, we think it appropriate to comment on some other matters in the record. Plaintiff's shotgun approach to the case requires that there be some winnowing of the issues before retrial. For example, she alleges a conspiracy under 42 U.S.C. § 1985 but offers no evidence of the invidious discrimination needed to support such a claim. *See Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Moreover, it would be helpful for the district court to determine preliminarily if the plaintiff can make out a violation of a right of access to the court simply by asserting that she was induced to let the statute of limitations run.

■ The liability of the township should be reappraised in view of the suggestion in *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that a municipality is not liable under § 1983 on the traditional respondeat superior theory. Furthermore, consideration should be given to its implication for the acts of police officers. *Cf. Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979) (sheriff not held liable for acts of deputy). Because the issue of the retroactive application of *Monell* was not briefed or argued below, we will not decide the question at this time. *Cf. Sterling v. Village of Maywood*, 579 F.2d 1350, 1356 n.15 (7th Cir.), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979) (applying *Monell* to suits pending at time of decision).

■ It also seems in order for the parties to clarify the basis for the alleged liability of defendant Merker. Although he was the chief of police, he was not present at the time the arrest, incarceration, and death occurred, and apparently had no knowledge of the events until afterward. If his only alleged wrongdoing was connected with the alteration of the log, he cannot be answerable for the wrongful death on the basis of those charges.

In addition, the status of the pendent state negligence claims should be clearly defined on remand. At the beginning of the charge, the court told the jury that it

was to decide two counts—the first under the federal Civil Rights Acts, the second under Pennsylvania law. The claims were not clearly distinguished, however, and no interrogatories were directed to the state law issues. At an earlier point in the litigation, the trial judge remarked that if the plaintiff failed to prove at trial that constitutional rights had been violated, the court would then decline to hear the pendent state claims. We are not certain whether the court intended to resubmit the case to the jury if they decided the constitutional claims in favor of the plaintiff or if the jury was to determine both claims at the same time. This matter can be clarified on retrial.

It should be understood that we are not reaching the merits of the plaintiff's § 1983 claims. That matter was neither briefed nor argued and we therefore do not consider whether the defendants were entitled to a directed verdict under either § 1983 or state law, even if the limitations period had been tolled.

 Several evidentiary rulings have also been raised on appeal that may recur on retrial. The plaintiff offered into evidence the newspaper article that alerted her to the falsification of the log entries, but the court sustained the defendants' objection. The ruling to exclude the newspaper article was not erroneous since the crucial factor was that the article caused the plaintiff to question the statements made to her by the police and to consult a lawyer. That the contents of the story were adequate to alert the plaintiff was not disputed, and excluding the other hearsay information it contained was not harmful to her.

 The court also refused to admit the report prepared by the district attorney who investigated the log falsification. The court determined that the report contained prejudicial hearsay. Although official reports of investigations may be admissible in some instances, *see Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1315–16 (3d Cir. 1978); *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1183 (3d Cir.), *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58

L.Ed.2d 428 (1978); Fed.R.Evid. 803(8), there is an exception where the sources of information or other circumstances indicate lack of trustworthiness. Fed.R.Evid. 803(8)(C). The trial judge entertained doubts on that score and we do not find error in his exclusion of the report, particularly since most of the information that it contained could have been obtained from witnesses who were present in court and who contributed to the investigation.

 The plaintiff wished to introduce statements made by the defendant Merker to detective Batezel, who conducted the investigation for the district attorney's office. At trial, Batezel refreshed his memory repeatedly by referring to a document he had prepared soon after an interview with Merker and which contained the composite recollections of Batezel and two other people. The witness was prepared to testify that Merker admitted his complicity in altering the log. The trial court recognized that Batezel's testimony was not hearsay and was admissible under Fed.R.Evid. 801(d)(2)(A) as an admission of a party opponent. The judge was concerned, however, that basic prejudice would result if Merker's statements were first related out of context. Therefore, the judge insisted that Merker be called to the stand and given an opportunity to deny or explain the statements before the detective was allowed to testify at length. Although this procedure was unusual, we do not find it to have been an abuse of discretion.

 Plaintiff also argues that Hughes and McDonough were improperly dismissed. We find no error in the trial judge's determination that there was insufficient evidence establishing their liability. We note also that as to the false arrest claim, the statute of limitations had run and that the testimony relating to tolling was applicable only to the claims for wrongful death. The police made no representations about the legality of the arrest that would have sufficed to mislead the plaintiff.

Accordingly, the judgment of the district court will be vacated and the case remand-

ed to the district court for further proceedings consistent with this opinion. Each party to bear its own costs.