**Charles TISA**

v.

**BEASLEY FM ACQUISITION CORP.; Beasley Broadcast Grp. Inc., Appellants.**

No. 08–3168.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 7, 2009.

Opinion filed: Sept. 2, 2009.

Thomas S. Myers, Jr., Esq., Paoli, PA, for Charles Tisa.

Elizabeth A. Malloy, Esq., Buchanan Ingersoll & Rooney, Philadelphia, PA, for Appellants.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

Beasley Acquisition Corp. and Beasley Broadcast Group, Inc. (collectively "Beasley") appeal from a jury verdict in favor of plaintiff Charles Tisa on his claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law, 42 Pa.C.S.A. § 260.1, *et seq.* Beasley contests the District Court's rulings regarding the ambiguity of Tisa's employment agreement and the admission of certain testimony and evidence at trial. Those contentions do not persuade us, and thus we affirm.

## I.

Because we write for the parties, our recitation of the facts is abbreviated. We review "the facts in the light most favorable to the verdict" winner, Tisa. *United States v. Jimenez,* 513 F.3d 62, 69 (3d Cir.2008).

Beasley hired Tisa in 2001 to serve as the program director for its owned and operated radio station, WRDR (96.5). In 2003, Beasley issued a warning to Tisa based on the sexual harassment complaint of a station employee. Despite this warning, Beasley renewed Tisa's employment agreement in 2004.

David Donahue, the station manager, negotiated with Tisa the terms of his new agreement. Among other things, Donahue agreed to increase the amount of severance money Tisa could receive for termination without cause from three months' to six months' pay. Tisa and Donahue memorialized this increase on a copy of Tisa's old agreement, jointly initialing the change. Bruce Beasley, the president of the station, approved Tisa's agreement in its final form and signed the document on its behalf.

Donahue left the station shortly after negotiating Tisa's renewed agreement. Lynn Bruder took his place. As station manager, she worked with Jerry Clifton, a long-time consultant to the station, to develop a new "rhythmic format" and improve programming, imaging, and on-air talent hiring. In the course of these efforts, Bruder told Clifton that she was displeased with Tisa's performance. Bruce Beasley also told Clifton that he disliked Tisa. Clifton shared these remarks with Tisa.

Bruder fired Tisa in 2005. She did so at a meeting attended by Tisa and Alice Etienne, a representative from Beasley's human resources department. At the meeting, Bruder first stated that she was firing Tisa because of his "poor ratings." But when Tisa informed her that, according to his employment agreement, termination for poor ratings secured him six months of severance pay, she also attributed his firing to insubordination. Bruder then told Tisa that he would receive only two weeks severance.

Tisa sued. He claimed that he was fired without cause and deserved the severance agreed to in his employment contract. Beasley responded that it fired Tisa for cause and, in any event, owed him only three months severance pay. In arguing the latter point, Beasley emphasized that Bruce Beasley had not initialed the severance pay change to Tisa's employment agreement at the time he approved it. Following discovery, Beasley also added an "after acquired evidence" defense based on the new claim of a station intern who alleged that Tisa had touched him inappropriately and propositioned him for oral sex in 2003. Beasley claimed that, had it

known about this incident in 2003, it would have fired Tisa for cause.

Before trial, Beasley filed a motion *in limine* asking the District Court to find that Tisa's employment agreement unambiguously required Bruce Beasley to have initialed the severance pay change in order to make it enforceable. The Court denied this motion. It also determined that Beasley would have to prove at trial that Tisa's agreement permitted Beasley to terminate him "for cause" based on conduct that occurred prior to the agreement's approval in 2004.

At trial, the Court asked the jury to determine whether Beasley fired Tisa for cause, considering the "after acquired evidence" only if it found that the agreement authorized Beasley to take it into account. The Court also requested the jury to decide whether the increased severance pay provision of Tisa's agreement was valid, assuming that it was as if Bruce Beasley signed it after Tisa and Donahue agreed to and initialed the provision. To help the jury make these decisions, the Court admitted hearsay evidence of the remarks Clifton said to Tisa, and allowed Tisa's attorney to read from Etienne's deposition transcript during closing arguments.

The jury found in Tisa's favor and awarded him $154,816.24. Beasley now appeals.[1]

## II.

Beasley argues that the District Court erred by: (1) denying its motion to declare Tisa's severance increase unambiguously invalid absent Bruce Beasley's initialing of it; (2) determining that Tisa's agreement was ambiguous as to what constituted a "for cause" termination; (3) admitting hearsay testimony of Clifton's statements to Tisa; and (4) allowing Tisa's attorney to quote from Etienne's discovery transcript

during closing argument. We disagree with each of these arguments.

## A.

Beasley's claim regarding the validity of the altered severance clause in Tisa's agreement is grounded in the authorizing provision of the agreement. The provision states: "This AGREEMENT will not be considered to be binding, nor will any modification become effective, until signed by Charles Tisa, David Donahue, and Bruce Beasley." According to Beasley, the provision "defined the process by which the parties could modify the agreement" and required that Bruce Beasley initial the severance increase in order to make it effective. Thus, Beasley claims, the Court was wrong to deny that the severance provision was unambiguously invalid and acted "inconsistently" in later ruling that the clause was unambiguously valid if Bruce Beasley signed the agreement after Tisa and Donahue changed that provision.

We exercise plenary review over the District Court's determinations regarding the ambiguity of Tisa's employment agreement. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1424 (3d Cir.1994). Under Pennsylvania law, which applies to this case, "[c]ontractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999). Applying this standard, we conclude that the Court did not err in making either of the rulings about which Beasley complains.

■ First, the Court properly denied Beasley's assertion that Tisa's agreement clearly required Bruce Beasley to initial the changed severance provision to give it

1. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

effect. The authorizing provision of the agreement requires only that Bruce Beasley sign the agreement to enact or modify it. No provision states that Bruce Beasley, or any party, was required to initial any changes written into the agreement.

■ Second, the District Court did not rule inconsistently in determining that the increased severance unambiguously was valid if Bruce Beasley, along with Tisa and Donahue, signed the agreement after they changed the severance provision's terms. Beasley contends this is incorrect because it claims that, in denying its *in limine* motion, the Court ruled that the agreement was ambiguous and then changed its mind, in violation of what Beasley understands as the "law of the case" doctrine, to rule that the agreement was unambiguous. This contention is misguided.

Based on our reading of the case, the District Court did not change its mind regarding the meaning of the authorizing provision in the agreement. Instead, it consistently ruled that the provision clearly validated the increased severance so long as Tisa and Donahue agreed to it before Bruce Beasley signed the employment agreement. The Court, of course, did not state this ruling in detail until after the trial began. But it was not required to do otherwise.

Even if the Court had changed its mind about the ambiguity of the authorizing provision, the law of the case doctrine would not demand that we vacate the jury's verdict. That doctrine "embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of a matter." *Commw. v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995). It "does not preclude a trial judge from clarifying or correcting an earlier ambiguous ruling," *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir.1994), nor

does it strip a "trial judge [of] the discretion to reconsider an issue," *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir.1979). *See also Micciche v. Eastern Elevator Co.*, 435 Pa.Super. 219, 645 A.2d 278, 280 (1994).

### B.

■ Beasley also fails to convince us that the Court erred in determining that Tisa's agreement was ambiguous as to what constituted a "for cause" termination. Specifically, we are not persuaded that the District Court was wrong to find that the agreement, which (to repeat) was drafted in 2004, was unclear on whether the accusation of Tisa's inappropriate sexual advances to the station intern in 2003 was an acceptable "for cause" reason to justify firing him.

The termination provision of Tisa's renewed employment agreement states in part:

> EMPLOYER shall have the right to terminate EMPLOYEE'S employment and all rights and obligations hereunder at any time "for cause" . . . , [which] shall include, but not be limited to:
>
> . . . .
>
> —conduct which reflects adversely upon and detracts from EMPLOYEE'S value as Program Director or the STATION'S or EMPLOYER'S public image or reputation;
>
> . . .
>
> —gross or willful misconduct or negligence
>
> . . .
>
> —insubordination

App. at 107–08. It is not clear to us that this provision clearly covers conduct occurring before the agreement's effective date in 2004. We therefore will not disturb the District Court's decision to let the jury interpret the provision's meaning.

## C.

■ Beasley next complains about the admission of hearsay testimony regarding Clifton's statements to Tisa. It asserts that Clifton was not an agent of the radio station and thus his remarks were inadmissible as "statement[s] by a party's agent concerning a matter within the scope of the agent's employment." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 297 (3d Cir. 2007). We review the District Court's decision to admit or exclude evidence for abuse of discretion. *Hechinger Inv. Co. of Del. v. Universal Forest Prods.*, 489 F.3d 568, 574 (3d Cir.2007).

Under Federal Rule of Evidence 801(d)(2)(D), "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is admissible hearsay. "[W]here a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer,' regardless whether the declarant has any involvement in the challenged employment action." *Marra*, 497 F.3d at 298 (quoting *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1216 (3d Cir.1995)).

In this case, Clifton was an "agent independent contractor," *see American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1434–39 (3d Cir. 1994), who had a "heavy hand in operations" at the station on "pretty much a daily basis." App. at 170–72. He provided controlling advice on programming, imaging, and hiring of on-air talent, and he conferred at times with Bruder and Bruce Beasley about Tisa's job performance. In fact, Clifton's remarks to Tisa about Bruder and Bruce Beasley's dislike of him stemmed directly from Clifton's involvement in a station management meeting at which Tisa's employment was discussed. *See id.* at 204–05. Accordingly, the District Court did not err in determining that Clifton was an agent of Beasley whose relevant remarks to Tisa were admissible hearsay.

## D.

■ Lastly, Beasley contends that the Court improperly permitted Tisa's attorney to read from Etienne's deposition transcript during his closing arguments. Beasley asserts that the Court incorrectly concluded that the proffered transcript passage merely reiterated a point which Etienne had made when testifying. We do not read the record to support such an assertion. *See id.* at 188–89, 409–07. But even assuming that the reading of the transcript did improperly introduce new evidence, such an error was harmless. *Cf. Dawson v. Chrysler Corp.*, 630 F.2d 950, 961 (3d Cir.1980) (holding that the admission and use by the jury of an inadmissible diagram was harmless where there was testimony regarding the contents of the diagram).

\* \* \* \* \* \*

Beasley fired Tisa without first considering the increased severance terms of his employment agreement. Now, after a jury in a federal trial rejected its pretextual excuses for terminating Tisa, Beasley makes arguments that fall far short of convincing us that we should overturn the jury's verdict. We thus affirm the judgment in favor of Tisa.