582 F.3d 432 (2009)
In re PHARMACY BENEFIT MANAGERS ANTITRUST LITIGATION (MDL 1782)
Bellevue Drug Co.; Robert Schreiber, Inc., doing business as Burns Pharmacy; Rehn-Huerbinger Drug Co., doing business as Parkway Drugs #4, on behalf of themselves and all others similarly situated; Pharmacy Freedom Fund; National Community Pharmacists Association
v.
[*]CaremarksPCS, Inc., f/k/a AdvancePCS (D.C. Civil No. 03-cv-04731) *433 [*]CaremarksPCS, Inc., f/k/a AdvancePCS, Appellant
No. 07-1151.
United States Court of Appeals, Third Circuit.
Argued: February 8, 2008.
Opinion filed: September 24, 2009.
Steven E. Bizar, Esq., Landon Y. Jones, III, Esq., Buchanan, Ingersoll & Rooney PC, Philadelphia, PA, Michael Sennett, Esq., Paula W. Render, Esq., (Argued), Jones Day, Victor E. Grimm, Esq., Jason M. Marks, Esq., Bell, Boyd & Lloyd LLP, Chicago, IL, for Appellant.
*434 Michael J. Freed, Esq., Freed Kanner London & Millen LLC, Bannockburn, IL, Jean K. Janes, Esq., Much Shelist Denenberg Ament & Rubenstein, P.C., Chicago, IL, H. Laddie Montague, Jr., Esq., (Argued), Martin I. Twersky, Esq., Berger & Montague, P.C., Philadelphia, PA, for Appellees.
Before: McKEE and AMBRO, Circuit Judges, and ALDISERT, Senior Circuit Judge.

OPINION
McKEE, Circuit Judge.
This action (the "Bellevue action") is one of six similar antitrust actions challenging the practices of prescription benefits managers that have been transferred by the Judicial Panel on Multidistrict Litigation for coordinated proceedings before the Honorable John P. Fullam of the United States District Court for the Eastern District of Pennsylvania under the caption: In re Pharmacy Benefit Managers Antitrust Litigation, MDL Docket No. 1782. The Bellevue action had initially been assigned to Judge Eduardo C. Robreno of the same Court. In an order entered on August 24, 2004, before the Bellevue action was transferred to Judge Fullam, Judge Robreno granted the defendant's motion to compel arbitration and stayed the action pending arbitration. Judge Fullam subsequently vacated Judge Robreno's order compelling arbitration, and that order is the subject of this appeal. The Appellant is AdvancePCS,[1] the defendant in the Bellevue action. Because we hold that Judge Fullam's order violated the law of the case doctrine, we will vacate that order and remand with directions to reinstate Judge Robreno's order compelling arbitration.

I. FACTS AND PROCEDURAL HISTORY
Bellevue Drug Co., Inc., Robert Schreiber, Inc., d//b/a Burns Pharmacy, and Rehn-Heurbinger Drug Co., d/b/a Parkway Drugs # 4 ("Pharmacy Plaintiffs"), are retail pharmacy businesses. The Pharmacy Freedom Fund and the National Community Pharmacists Association ("Association Plaintiffs") are associations of community pharmacies and pharmacists, respectively.
AdvancePCS is a prescription benefits manager ("PBM") for drug benefit plans sponsored by employers, unions, government agencies, insurance plans and others ("Plan Sponsors"). PBMs are retained by Plan Sponsors to efficiently manage their benefit plans and to achieve cost savings for Plan Sponsors and plan members who may be required to pay a portion of the drug cost, known as a co-payment. Efficiencies and cost savings are achieved by PBMs in a variety of ways, including negotiating discounts or rebates from drug manufacturers, providing mail order prescription service to plan members, contracting with retail pharmacies for reimbursement when prescriptions are filled for plan members, and electronic processing and paying of claims.
Here, the Pharmacy Plaintiffs entered into written agreements ("Pharmacy Provider Agreements" or "Agreements") with AdvancePCS to provide prescription drugs and related pharmacy services to persons covered by drug benefit plans administered by AdvancePCS. The Pharmacy Provider Agreements contain an "Arbitration Clause" which provides:

Arbitration. Any and all controversies in connection with or arising out of this *435 Agreement will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of law, and may only award remedies provided in this Agreement. The award of the arbitrator will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Arbitration under this provision will be conducted in Scottsdale, Arizona, and Provider hereby agrees to such jurisdiction, unless otherwise agreed to by the parties in writing or mandated by Law, and the expenses of the arbitration, including attorneys' fees, will be paid by the party against whom the award of the arbitrator is rendered. This Section 9.5 and the parties' rights hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

Section 9.5 (App.488-89). The Pharmacy Provider Agreements also contain a "Remedies Clause" which provides:

Remedies. Provider acknowledges that any unauthorized disclosure or use of [AdvancePCS] proprietary information would cause [AdvancePCS] immediate and irreparable injury or loss. Accordingly, should Provider fail to abide by this Section 6[captioned "Intellectual Property Rights: Confidentiality"], [AdvancePCS] shall be entitled to specific performance including immediate issuance of a temporary restraining order or preliminary injunction enforcing this Agreement, and to judgment for damages (including attorneys' fees) caused by the breach and to all other remedies provided by this Agreement and applicable law.
Section 6.4 (App.487). In addition, the Agreements contain limitation of liability and indemnification provisions. The limitation of liability provision reads:

Limitation on Liability. [AdvancePCS] shall not be liable to Provider for any claim, injury, demand or judgment based upon contract, tort or other grounds (including warranty of merchantability) arising out of the sale, compounding, dispensing, manufacturing, or use of any drug or device dispensed by or any Pharmacy Services provided by Provider under this Agreement. In no event is either party liable to the other party for indirect, consequential or special damages or any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation or loss of customers or business.
Section 7.1 (App.487). The indemnification provision reads:

Indemnification. Provider agrees to indemnify and hold [AdvancePCS], its shareholders, directors, employees, agents and representatives free and harmless for, from and against any and all liabilities, losses, settlements, claims, demands, and expenses of any kind (including attorneys' fees), that may result or arise out of: (I) any actual or alleged malpractice, negligence or misconduct of Provider in the performance or omission of any act or responsibility assumed by Provider under this Agreement, or (ii) the sale, compounding, dispensing, failure to sell, manufacture or use of a drug or device dispensed by Provider of Pharmacy Service provided by Provider under this Agreement.
Section 7.2 (App.487).
On August 15, 2003, the Pharmacy Plaintiffs, for themselves and all other similarly situated pharmacies that "contracted with AdvancePCS to dispense and sell brand name and generic prescription drugs for any prescription drug benefit plan(s)," Complaint ¶ 29, and the Association Plaintiffs filed a complaint in the United States District Court for the Eastern *436 District of Pennsylvania captioned Bellevue Drug Co., et al. v. AdvancePCS, No. 2:03-cv-04731.[2] The complaint alleged that AdvancePCS used the combined economic power of its Plan Sponsors to reduce the contractual amount it pays to retail pharmacies below the levels that would prevail in a competitive marketplace. It also alleged that the Agreements impose certain limitations on drug refills and co-payment charges to plan members. The complaint asserted that the foregoing actions constituted an unlawful conspiracy among AdvancePCS and its Plan Sponsors to restrain competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[3]
On September 25, 2003, AdvancePCS moved to dismiss the complaint, arguing that the plaintiffs lacked standing. AdvancePCS also argued that, even assuming arguendo that plaintiffs had standing, they had not sufficiently alleged either horizontal collusion to state a per se violation of the antitrust laws or sufficient injury to competition to allege a rule of reason violation.[4] AdvancePCS submitted with that motion a binder of exhibits of allegedly judicially noticeable materials. The materials included three lengthy government-sponsored studies of the efficiency enhancing effects of PBMs, as well as AdvancePCS's own Form 10-K and other materials.
In an opinion dated March 2, 2004, Judge Robreno denied AdvancePCS's motion, finding that the Plaintiffs suffered antitrust injury and had antitrust standing. The district court further held that the allegations of horizontal collusion were sufficient to allege both a per se violation and to state a claim for restraint of trade under the rule of reason based upon alleged price suppression.[5]
On March 16, 2004, AdvancePCS filed an answer to the complaint and moved to reconsider the March 2, 2004 order or to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[6] On April, 9, 2004, *437 the Pharmacy Plaintiffs and the Association Plaintiffs filed an opposition to that motion. On May 14, 2004, Judge Robreno denied AdvancePCS's motion.
On May 17, 2004, AdvancePCS submitted a revised corporate disclosure form to reflect the fact that it had been acquired in March 2004 by Caremark. See n. 1, supra.
On June 21, 2004, some ten months after the Plaintiffs' complaint was filed (but before any discovery began), AdvancePCS filed a motion to compel arbitration in which it asked the district court to enforce the arbitration clause in the Pharmacy Provider Agreements and enter an order compelling arbitration of all of the Plaintiffs' claims. In the alternative, AdvancePCS asked for an order compelling arbitration of the claims of the Pharmacy Plaintiffs and staying the claims of the Association Plaintiffs pending the completion of arbitration.
Plaintiffs based their opposition to the motion to compel on two distinct grounds. First, they contended that AdvancePCS waived any right to arbitrate by actively litigating the Plaintiffs' claims for ten months. Second, they contended that the arbitration agreement was unenforceable because it precluded them from pursuing statutory antitrust remedies. The Plaintiffs also claimed that they would not be able to afford arbitration, particularly in light of the provision in the Agreements that costs and attorneys' fees are to be paid by the party who loses the arbitration.
In a Memorandum Order entered August 24, 2004, Judge Robreno granted AdvancePCS's motion to compel arbitration and stayed the district court action. He found that the Pharmacy Plaintiffs had entered into enforceable arbitration agreements that encompassed any antitrust claims, and that AdvancePCS had not waived its right to seek arbitration.
On September 7, 2004, the Plaintiffs filed a motion to reconsider or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs urged the district court to reconsider its decision on the enforceability of the arbitration agreement; alternatively, they requested that the district court dismiss the case so that they could file an appeal. On June 17, 2005, Judge Robreno denied reconsideration and certification and ordered that the case remain stayed in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.
However, the Plaintiffs did not thereafter initiate arbitration proceedings. AdvancePCS contends that on April 7, 2006, the Plaintiffs filed a motion before the Judicial Panel on Multidistrict Litigation ("MDL Panel") for transfer of this and certain other cases under 28 U.S.C. § 1407 for coordinated pretrial proceedings. The Plaintiffs dispute this claim and insist that they did not file the motion before the MDL Panel. They contend that the plaintiffs in the Brady action, see n. 3, supra, filed that motion.
In any event, on May 19, 2006, the Plaintiffs filed a motion to lift the stay and dismiss the complaint so that they could pursue an appeal of the district court's August 24, 2004, and June 17, 2005, orders. In that motion to dismiss, the Plaintiffs represented that they did not intend to arbitrate their claims but desired to obtain appellate review of the orders compelling arbitration.
As we noted at the outset, this case was transferred to Judge Fullam by the MDL Panel. That transfer occurred on August 24, 2006, before Judge Robreno ruled on the Plaintiffs' motion to lift the stay and dismiss their complaint. In re Pharmacy Benefit Managers Antitrust Litig., 452 F.Supp.2d 1352 (Jud.Pan.Mult.Lit.2006).
*438 On August 25, 2006, Judge Robreno transferred this action to Judge Fullam pursuant to the MDL Panel's August 24, 2006 transfer order. On December 7, 2006, Judge Fullam convened a status conference in the MDL proceedings, which then included this action. At that conference, Judge Fullam heard argument on the Plaintiffs' motion to lift the stay and dismiss the complaint.
On December 18, 2006, Judge Fullam sua sponte signed an order and supporting memorandum vacating Judge Robreno's August 24, 2004, order compelling arbitration and staying litigation.[7] Judge Fullam then dismissed the then-pending motion to dismiss the complaint as moot. In re Pharmacy Benefit Managers Antitrust Litig. (Bellevue Drug Co. v. Advance PCS), 2006 WL 3759712 (E.D.Pa. Dec.18, 2006). In doing so, Judge Fullam explained that "Judge Robreno's Orders compelling arbitration were clearly appropriate under the Federal Arbitration Act and the Congressional policies reflected in that statute." Id. at * 1. However, Judge Fullam believed that, in ordering arbitration, Judge Robreno "did not actually decide that the issues involved were arbitrable, or even whether the arbitration agreement relied upon was enforceable; he merely, in accordance with the general policy of favoring arbitration, required that all issues be submitted initially to the arbitrator for decision." Id. Noting the "action of the [MDL Panel] (which clearly assumed that the stay or proceedings did not preclude coordinated pretrial proceedings)," Judge Fullam reasoned that he could therefore "diverge from Judge Robreno's Orders to the limited extent of considering whether any useful purpose would be served in submitting all preliminary determinations to the arbitrator." Id. Judge Fullam believed: "the task assigned to me as transferee judge can best be performed by expediting the decision which, I believe, would necessarily have been reached by the arbitrator with respect to the procedural aspects of this litigation." Id. at *2.
In deciding the "procedural aspect of th[e] litigation," Judge Fullam found that because the "arbitrator must follow the rule of law, and may only award remedies provided" in the agreement, the "arbitrator is precluded from considering the antitrust claims asserted by plaintiff in this litigation." Id. Thus, Judge Fullam had "no difficulty in concluding either that the parties never intended this type of litigation to be submitted to arbitration, or that the Arbitration Agreement is unenforceable because it violates public policy." Id. at AdvancePCS then filed this appeal.[8]

II. DISCUSSION
AdvancePCS makes a number of arguments. It contends, inter alia, that Judge Fullam's order vacating Judge Robreno's order compelling arbitration violates the Federal Arbitration Act ("FAA"); that the claims of the Pharmacy Plaintiffs and the Association Plaintiffs are subject to arbitration; and that the arbitration clauses in the Pharmacy Provider Agreements are valid and enforceable. However, we need not address the merits of any of those arguments because we agree with Advance PCS that Judge Fullam's order vacating Judge Robreno's orders compelling arbitration cannot stand under the law of the case doctrine.
*439 In Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), the Supreme Court noted:
Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.
Id. at 618, 103 S.Ct. 1382 (citations omitted). The "[l]aw of the case rules have developed `to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 (3d Cir.1994) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, Federal Practice and Procedure § 4478 at 788 (2d ed.1981)).
"The . . . doctrine does not restrict a court's power but rather governs its exercise of discretion." Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, 123 F.3d 111, 116 (3d Cir.1997) (citations omitted). The Supreme Court has explained the scope of this discretion as follows:
A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.
Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citing Arizona v. California, 460 U.S. at 618 n. 8, 103 S.Ct. 1382).
In addition to the extraordinary circumstance noted by the Supreme Court in Christianson, we have we "recognized several `extraordinary circumstances' that warrant a court's reconsideration of an issue decided earlier in the course of litigation." Public Interest Research Group, 123 F.3d at 116-17. In Public Interest Research Group, we explained that the law of the case doctrine does not preclude a court from revisiting its own decisions or one of a coordinate court where (1) new evidence is available or (2) a supervening new law has been announced. 123 F.3d at 117 (citations omitted). In addition, we have held the "law of the case doctrine does not preclude a trial judge from clarifying or correcting an earlier, ambiguous ruling." Swietlowich v. County of Bucks, 610 F.2d 1157, 1164 (3d Cir.1979). We have also held that "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." Id. (citing Messenger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). However, we have also been careful to caution that if a "trial judge decides to change or explain an earlier ruling, he should state his reasons on the record" and also "take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." Id.
Judge Fullam did not rely on any of the recognized exceptions to the law of the case doctrine in vacating Judge Robreno's order compelling arbitration. He also failed to find any extraordinary circumstance that would have justified vacating Judge Robreno's order compelling arbitration. Moreover, Judge Fullam held that Judge Robreno's order was "clearly appropriate" under the FAA, 2006 WL 3759712, at * 1, and it is clear that Judge Fullam misread Judge Robreno's opinion in support of the August 24, 2004, order compelling arbitration. As stated above, Judge Fullam believed that Judge Robreno:
did not actually decide that the issues involved in the present case were arbitrable, or even whether the arbitration *440 agreement relied upon was enforceable; he merely, in accordance with the general policy of favoring arbitration, required that all such issues be submitted initially to the arbitrator for decision.
Id. That is simply not accurate. In compelling arbitration, Judge Robreno expressly stated: "it is unmistakably clear that the instant dispute falls within the scope of the Arbitration Agreement," App. A245, and he expressly found "that there is a valid agreement to arbitrate between the parties." App. A268. In fact, the "Remedies" section of Judge Robreno's August 20, 2004, Memorandum begins: "[f]inding that there is a valid agreement to arbitrate between the parties and that the instant dispute falls within the scope of the Arbitration Agreement . . . and that the Arbitration Agreement is not unconscionable, the Court will grant the . . . motion to compel arbitration and stay the proceedings pending the outcome of arbitration." Id.
Thus, Judge Robreno could not have been clearer, and Judge Fullam's reading of Judge Robreno's Memorandum is clearly inconsistent with Judge Robreno's findings and legal conclusions.
Judge Fullam was nevertheless convinced that he had the authority to vacate Judge Robreno's order compelling arbitration "notwithstanding `law of the case' principles." 2006 WL 3759712, at *1. Judge Fullam explained: "As a general proposition, a transferee judge under the Multidistrict statute may vacate or modify any order of a transferor court bearing upon pretrial matters." Id. However, we can find nothing in the text of 28 U.S.C. § 1407, the Multidistrict litigation transfer statute, that authorizes a transferee judge to vacate or modify an order of a transferor judge.[9] Moreover, if Judge Fullam's *441 interpretation of the statute were accurate, litigation could begin anew with each MDL transfer. Section 1407 does allow the Joint Panel on Multidistrict Litigation to "prescribe rules for the conduct of its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure," 28 U.S.C. § 1407(f), but there is nothing in the rules adopted by the Joint Panel on Multidistrict Litigation that authorizes a transferee judge to vacate or modify the order of a transferor judge, see 199 F.R.D. 425 (2001). Moreover, we do not believe that Congress intended that a "Return to Go" card would be dealt to parties involved in MDL transfers.
Judge Fullam's belief that he had the authority to vacate or modify any order of a transferor court was based on two sources, viz., the Manual for Complex Litigation ("MCL-4th"), § 20.132 (4th ed.2004) and In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig., 664 F.2d 114 (6th Cir. 1981). The MCL-4th, § 20.132 does state, *442 inter alia, that: "The transferee judge may vacate or modify any order of a transferor court, including protective orders; unless altered, however, the transferor court's orders remain in effect." However, that clearly does not have the force of law and can not undermine Supreme Court precedent or the decisions of this court. See MCL-4th, Introduction (advising that the MCL-4th "is not, and should not be cited as, authoritative legal or administrative policy").
Interestingly, the cited provision in the MCL-4th stating that the transferee court may vacate or modify any order of a transferor court is based on In re Upjohn, supra. See MCL-4th, § 20.132 n. 659. However, Upjohn only held that a transferee court can modify a transferor court's protective order when necessary to "harmonize activity relating to discovery." 664 F.2d at 118. Therefore, Upjohn only applies to protective orders that are required to "harmonize ... discovery."[10]Upjohn does not carve an exception out of the law of the case doctrine that gobbles up the limitations inherent in that doctrine. Thus, Upjohn does not support a claim that a transferee court has the power to vacate or modify any order of a transferor court. On the contrary, the Upjohn court was very careful to limit the reach of its discussion:
[I]t cannot be successfully urged that a transferee court is without power to modify or even vacate a protective order once entered when circumstances so dictate. Clearly, the power of a district judge includes the power to modify a protective order....
* * * * * *
Therefore, if the judicial power to modify a protective order exists, it must be capable of being exercised on need, and in cases where the proceedings have been transferred, it must follow that such power must then pass to the transferee judge. It cannot exist in a vacuum. This conclusion is buttressed by the express language in the statute conferring all powers of the district judge upon the transferee judge.
Id. (emphasis added). Under Upjohn, the power of the transferor court "pass[es] to the transferee judge." Therefore, if the transferor judge has the power to vacate or modify a protective order when needed, commonsense compels the conclusion that the transferee court must also have the power to vacate or modify a protective order of a transferor court when necessary and appropriate. Concomitantly, absent such need or propriety (i.e., "extraordinary circumstances"), the transferee court simply does not have the power to vacate or modify an existing protective order.
Accordingly, if the transferor court is bound by the law of the case doctrine (subject to the exceptions discussed above), the transferee court must be similarly bound. Nothing in § 1407 suggests that Congress intended to confer more power on the transferee court than the transferor court would have had absent the transfer under 28 U.S.C. § 1407.
Judge Fullam therefore interpreted Upjohn far too liberally in stating: "As a general proposition, a transferee judge under the Multidistrict statute may vacate or modify any order of a transferor court bearing upon pretrial matters." 2006 WL 3759712, at *1 (citing In re Upjohn, supra; *443 MCL-4th, § 20.312). On the contrary, given the havoc and potential delay and confusion that such a broad proposition could visit on parties involved in multidistrict litigation, it is not surprising that the Upjohn court cautioned: "The rule of the law of the case ... is particularly applicable to multidistrict litigation in which the presence of a large number of diverse parties might otherwise result in constant relitigation of the same legal issue." 664 F.2d at 119 (emphasis added).

III. CONCLUSION
Because Judge Fullam's order vacating Judge Robreno's order compelling arbitration violated the law of the case doctrine, we will vacate Judge Fullam's order and remand with directions to reinstate the order compelling arbitration and staying this case pending arbitration.
NOTES
[*] (Amended in accordance with Clerk's Order dated 02/20/07).
[1] On March 24, 2004, AdvancePCS became a wholly owned subsidiary of Caremark Rx, Inc., and changed its name to CaremarkPCS. In the proceedings in the district court, the defendant was AdvancePCS and for consistency will be referred to here as Advance PCS.
[2] The Association Plaintiffs joined the action solely to seek injunctive relief on behalf of their members and did not seek status as representative plaintiffs or class members.
[3] Similar complaints were filed in several federal district courts against various PBMs. Those complaints are: N. Jackson Pharmacy v. Express Scripts Inc., No. 5:03-2696 (N.D.Ala.); N. Jackson Pharmacy v. Medco Health Solutions, Inc., No. 5:-3-2697 (N.D.Ala.); Mike's Med. Ctr. Pharmacy v. Medco Health Solutions, Inc., No. 3:05-5108 (N.D.Cal.); N. Jackson Pharmacy v. Caremark RX Inc., No. 1:04-5674 (N.D.Ill.); Brady Enters., Inc. v. Medco Health Solutions, Inc., No. 2:03-4730 (E.D.Pa.). The last named case, Brady Enters., Inc., was filed simultaneously with the complaint here. Brady was initially assigned to Judge Jan E. Dubois but, on August 27, 2003, it was reassigned to Judge Fullam.
[4] In Eichorn v. AT & T Corp., we explained:

Once there is the finding of antitrust injury, courts examine the alleged illegal conduct under one of two distinct tests: per se violation or rule of reason. Under the per se test, "agreements whose nature and necessary effect are so plainly anti-competitive that no elaborate study of the industry is needed to establish their illegality" are found to be antitrust violations. For those activities not within the per se invalidity category, courts employ the rule of reason test. Under this test, plaintiffs have the burden of establishing that, under all the circumstances, "the challenged acts are unreasonably restrictive of competitive conditions" in the relevant market.
248 F.3d 131, 139 (3d Cir.2001) (citations omitted).
[5] "Horizontal collusion" exists where competitors at the same market level agree to fix or control the prices they will charge for their respective goods or services. It is a per se unreasonable restraint of trade under the Sherman Act. See In re Flat Glass Antitrust Litig., 385 F.3d 350 (3d Cir.2004).
[6] AdvancePCS's action was purportedly the result of the Federal Trade Commission's decision (memorialized in a letter) not to investigate a proposed acquisition of AdvancePCS by Caremark, see n. 1, supra.
[7] That order was entered on December 19, 2006.
[8] We have jurisdiction pursuant to Sections 16(a)(1)(A) and (B) of the Federal Arbitration Act, 9 U.S.C. §§ 16(a)(1)(A) and (B), which provide that appeals may be taken from orders denying motions to compel arbitration and denying stays of proceedings pending arbitration.
[9] That statute provides:

(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.
(b) Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation. For this purpose, upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title. With the consent of the transferee district court, such actions may be assigned by the panel to a judge or judges of such district. The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.
(c) Proceedings for the transfer of an action under this section may be initiated by 
(i) the judicial panel on multidistrict litigation upon its own initiative, or
(ii) motion filed with the panel by a party in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate. A copy of such motion shall be filed in the district court in which the moving party's action is pending.
The panel shall give notice to the parties in all actions in which transfers for coordinated or consolidated pretrial proceedings are contemplated, and such notice shall specify the time and place of any hearing to determine whether such transfer shall be made. Orders of the panel to set a hearing and other orders of the panel issued prior to the order either directing or denying transfer shall be filed in the office of the clerk of the district court in which a transfer hearing is to be or has been held. The panel's order of transfer shall be based upon a record of such hearing at which material evidence may be offered by any party to an action pending in any district that would be affected by the proceedings under this section, and shall be supported by findings of fact and conclusions of law based upon such record. Orders of transfer and such other orders as the panel may make thereafter shall be filed in the office of the clerk of the district court of the transferee district and shall be effective when thus filed. The clerk of the transferee district court shall forthwith transmit a certified copy of the panel's order to transfer to the clerk of the district court from which the action is being transferred. An order denying transfer shall be filed in each district wherein there is a case pending in which the motion for transfer has been made.
(d) The judicial panel on multidistrict litigation shall consist of seven circuit and district judges designated from time to time by the Chief Justice of the United States, no two of whom shall be from the same circuit. The concurrence of four members shall be necessary to any action by the panel.
(e) No proceedings for review of any order of the panel may be permitted except by extraordinary writ pursuant to the provisions of title 28, section 1651, United States Code. Petitions for an extraordinary writ to review an order of the panel to set a transfer hearing and other orders of the panel issued prior to the order either directing or denying transfer shall be filed only in the court of appeals having jurisdiction over the district in which a hearing is to be or has been held. Petitions for an extraordinary writ to review an order to transfer or orders subsequent to transfer shall be filed only in the court of appeals having jurisdiction over the transferee district. There shall be no appeal or review of an order of the panel denying a motion to transfer for consolidated or coordinated proceedings.
(f) The panel may prescribe rules for the conduct of its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure.
(g) Nothing in this section shall apply to any action in which the United States is a complainant arising under the antitrust laws. "Antitrust laws" as used herein include those acts referred to in the Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12), and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a, and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56); but shall not include section 4A of the Act of October 15, 1914, as added July 7, 1955 (69 Stat. 282; 15 U.S.C. 15a).
(h) Notwithstanding the provisions of section 1404 or subsection (f) of this section, the judicial panel on multidistrict litigation may consolidate and transfer with or without the consent of the parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton Act.
28 U.S.C. § 1407.
[10] The court in Upjohn, defined the issue before it as follows: "The issue in this appeal is the extent to which a transferee judge in multidistrict litigation proceedings under 28 U.S.C. § 1407 may vacate and modify protective orders earlier entered by transferor courts, where those orders enjoin the use of discovery materials obtained through the federal litigation by others not parties to the multidistrict litigation." 664 F.2d at 115.