**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-1835 and 13-1985
_____

SARA LESENDE;
VICTOR LESENDE, HER HUSBAND,

v.

POLICE OFFICER ARNOLD BORRERO;
CITY OF NEWARK; NEWARK POLICE DEPARTMENT;
SGT. LILLIAN CARPENTER;
CAPT. RICHARD CUCCOLO;
ACTING CAPT. CRYSTAL BURROUGHS;
CAPT. ALBERT CICALESE;ANTHONY AMBROSE, III,
DIRECTOR OF POLICE; CHIEF OF POLICE IRVING
BRADLEY; JOHN DOE SGT. BADGE NO. 6916
ABC CORPS 1-10; JOHN DOES 1-10

        City of Newark,
                      Appellant in No. 13-1835

        Sara Lesende;
        Victor Lesende, Her Husband,
                      Appellants in No. 13-1985

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-06-cv-04967)
District Judge: Hon. Dickinson R. Debevoise
_____

Argued April 7, 2014

BEFORE: FISHER, SCIRICA AND COWEN, Circuit
Judges

(Filed: May 15, 2014)

John R. Scott, Esq. (Argued)
Hardin, Kundla, McKeon & Poletto
673 Morris Avenue
P.O. Box 730
Springfield, NJ 07081

    Counsel for Appellant/Cross-Appellee City of Newark

Robert D. Kobin, Esq. (Argued)
Nusbaum, Stein, Goldstein, Bronstein & Kron
20 Commerce Boulevard
Suite E
Succasunna, NJ 07876

    Counsel For Appellees/Cross-Appellants Sara Lesende
    and Victor Lesende, Her Husband

_____

2

## OPIONION

OPINION
_____

COWEN, Circuit Judge.

This matter requires application of well-settled legal doctrines to an unusual set of facts. As detailed below, Sara Lesende ("Lesende") and her husband, Victor Lesende, brought suit against the City of Newark ("the City") and Police Officer Arnold Borrero. Following a five-day trial, a jury found that both Officer Borrero and the City were liable and awarded Lesende $2,700,000 in compensatory damages. The City moved for remittitur, and its motion was granted; the District Court remitted Lesende's award to $750,000 and informed her of her right to either accept the remitted award or reject it and proceed to a second jury trial, limited to the quantum of her compensatory damages. She chose the latter option.

A second jury was convened and a new trial held, and the second jury awarded Lesende $4,000,000 in compensatory damages. Thereafter, the City moved anew for remittitur. The District Court did not directly resolve that motion. Instead, after conferring with counsel for both Lesende and the City, the court entered a final order, vacating the second jury's verdict, vacating the earlier-entered order that granted the City's motion for remittitur from the first jury's verdict, and reinstating the first jury's verdict in its entirety. The instant appeal and cross-appeal followed.

3

On appeal, the City attacks the sufficiency of the evidence presented at trial.  It also asks us to consider whether the District Court erred either by failing to order a second trial on its liability or instructing the jury to apportion the above-mentioned damages award between Officer Borrero and the City.  Finally, it asks us to assign error to the vacatur of the second jury's verdict and reinstatement of the first jury's verdict, contending instead that the District Court should simply have reduced the second jury's verdict to $750,000.  Lesende, as evidenced by the cross-appeal, agrees that the vacatur of the second verdict and reinstatement of the first verdict constitute legal error.  She argues, however, that error lies in the District Court's entry of a compensatory damages award less than that found by the second jury—i.e., less than $4,000,000.

For the reasons detailed below, though we see little merit in the arguments raised in the appeal or cross-appeal, we will vacate the District Court's final order and remand with instruction that the District Court should resolve the City's motion for remittitur of the second jury's verdict.

## I.

### A.    The Nature of the Lesendes' Lawsuit

The Lesendes' lawsuit was predicated on Lesende's encounter with Officer Borrero on October 18, 2004.  The District Court described it as follows:

Mrs. Lesende was pulled over by Mr. Borrero while she was searching for a parking spot near her home in Newark[, New Jersey]. At the time, Mr. Borrero was an officer in the Newark police department, but he was not on duty and was not in uniform. For reasons that are unclear, Mr. Borrero started a loud argument with Mrs. Lesende, claiming that she had been driving her car in an unsafe fashion. Believing that she did not accept his authority, Mr. Borrero produced his badge and gun. He opened her car door, climbed on top of Mrs. Lesende and attacked her with his fists, causing serious injury to her neck, face and ribs. A crowd gathered, and multiple witnesses testified that Mr. Borrero savagely assaulted Mrs. Lesende. When an elderly bystander attempted to intervene, Mr. Borrero turned his weapon on the man and threatened to kill him.

Additional officers arrived at the intersection, and Mrs. Lesende was handcuffed and taken to the police station. Once at the station, Mrs. Lesende was held for the better part of a day without counsel. During that time she was repeatedly harassed by Mr. Borrero. After approximately 12 hours of detention, Mrs. Lesende was charged with assaulting a police officer and resisting arrest and released on $10,000 bail.

In the months following the arrest, Mrs. Lesende was forced to hire counsel and appear

in court on multiple occasions to answer the groundless and frivolous charges. At the same time, the Newark Police Department engaged in efforts to intimidate witnesses and discourage any action against Mr. Borrero. Indeed, Mr. Lesende testified that he was told by a Newark police officer that no action would ever be taken by the city against Mr. Borrero. In addition, when Mr. Borrero was brought before [an] Administrative Law Judge on disciplinary charges, the city "neglected" to present his prior disciplinary history, permitting him to lie about the extent of his past misconduct and avoid termination. Borrero's extensive discipline file included 45 prior charges—including multiple findings that Mr. Borrero had either filed false assault charges or was "not credible" in his testimony.

*Lesende v. Borrero*, No. 06-4967, 2011 WL 6001097, at *1-2 (D.N.J. Nov. 30, 2011). The District Court's description of that incident, which substantially comports with the descriptions appearing in the briefs filed before this Court, has not been challenged.

The Lesendes brought suit in October of 2006. Lesende raised claims against Officer Borrero pursuant to 42 U.S.C. § 1983 ("Section 1983") for use of excessive force, false arrest and/or imprisonment, and malicious prosecution. She also raised claims against the City pursuant to Section 1983 and *Monell v. Department of Social Services*, 436 U.S.

6

658 (1978), for negligently training and supervising Officer Borrero and, separately, for failing to terminate his employment before October 18, 2004. Her husband raised a derivative claim against Officer Borrero and the City for loss of consortium.[1]

## B.     The First Trial

The first trial was held in June of 2011. Both the Lesendes and the City were represented by counsel. Officer Borrero was represented during jury selection and during the beginning of trial, but he thereafter appeared *pro se* and did not present a defense.[2]

---

[1] Other claims were raised against Officer Borrero, the City, and various other named and fictitious defendants. For our purposes, those claims are not relevant.

[2] It appears that Officer Borrero was represented by attorneys retained via the Fraternal Order of Police, that he was dissatisfied with the services rendered by those attorneys, and that during trial he sought leave to find and hire other counsel. (*See* J.A. 287-91.) It further appears that the District Court, acting on Officer Borrero's request, informally allowed his attorneys to withdraw from representation in this matter and instructed Officer Borrero that he "ha[d] four days before the trial resumes," that it was his responsibility, if he so chose, to find other counsel, and that the trial would "proceed no matter what." (J.A. 290.)

Following the presentation of evidence, neither Officer Borrero nor the City moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Lesende, however, raised such a motion with respect to each of the three Section 1983 claims raised against Officer Borrero. This colloquy, which concerns both Lesende's motion and the proposed jury questionnaire (i.e., the verdict sheet), followed:

> THE COURT: Well, normally I would defer a motion for directed verdict and expect the jury to do the work that I otherwise should have done. And in normal cases no harm has been done that results from that, because I can always reverse it if I think, after further st[u]dy, it's appropriate.
>
> In this case there is a major problem. Should the jury find no, and I conclude there should be a judgment, then the jury would not have directed itself to the really critical question in this case, which is, has Mrs. Lesende proved that she's been deprived of her rights as a result of a custom [or] policy [of] the City of Newark? So I think I'm going to have to rule on the directed verdict motion at this time, and . . . I will direct the jury to vote to check yes on each of those three questions. [The e]vidence is so overwhelming. There's no reasonable person that could find that there wasn't a violation of federal rights here by Officer Borrero. . . .
>
> MR. KOBIN[, COUNSEL FOR THE LESENDES]: There is a damage assessment.

8

THE COURT: Well, that's true, damages will still be an issue.

MR. KOBIN: Obviously I assume that you're not directing a verdict on damages against him.

THE COURT: Oh, no, only on liability.

MS. BENJAMIN[, COUNSEL FOR THE CITY]: With respect to your ruling, the question on damages come[s] with respect to the City of Newark.

THE COURT: What did I do to the City of Newark?

MS. BENJAMIN: The questions that you have on damages, you indicate on the [verdict] sheet if they find yes for 1, 2, 3,[3] or 4,[4] you have an issue of damages, and maybe this is another issue. If you're directing them to answer yes, for 1, 2[,] and 3, it may be I'm going to [suggest] to the Court that damages need to be separate. There needs to be [] separate damages for Officer Borrero then, and one for the City of Newark.

MR. KOBIN: No, your Honor, it's punitive damages as to Officer Borrero, which would still be on the sheet.

---

[3] Questions 1, 2, and 3 concerned Officer Borrero's liability.

[4] Question 4 concerned the City's liability.

9

THE COURT:  That is separate.

MR. KOBIN:  Yes.

THE COURT:  Th[at] wouldn't affect the City.

MR. KOBIN:  If you're directing them to answer yes for 1, 2, and 3, it's your position then that they would only get punitive damages. What if they find no?  Let's just hypothetically find no against the City's liability.

THE COURT:  Well, then, that's it.

MR. KOBIN:  Well then --

MS. BENJAMIN:  You follow what I'm saying?

MR. KOBIN:  They can still award in this case compensatory damages against Officer Borrero, couldn't they?  Am I missing something?

MS. BENJAMIN:  It needs to be separate.

MR. KOBIN:  No, it's still compensatory.

MS. BENJAMIN:  You just ruled that there's a directed verdict with respect to the claims against Officer Borrero.

THE COURT:  Right.

MS. BENJAMIN:  Let's say tomorrow the jury says: City of Newark, you're not liable with respect to the damages aspect of it.  Then those damages are going to be against Officer Borrero.

THE COURT:  Right.

10

MS. BENJAMIN: I don't know how it's -- how it's proposed here, clear to them, that that's where the damages is [sic] coming from.

THE COURT: Well, the damages, they probably won't come from any place. That's what the long and short of it is. If the City is held not liable, then you don't care anymore.

MS. BENJAMIN: Okay.

(J.A. 569-73.)

The jury retired to deliberate and returned a unanimous verdict, finding, as it had been directed by the District Court, that Officer Borrero was liable under each of the three Section 1983 claims raised against him. The jury also separately and independently found that the City was liable for Lesende's injuries because Officer Borrero's wrongdoing was the "result of an official policy or custom of the City." (J.A. 917.) It then found that "the amount of compensatory damages to which Mrs. Lesende [wa]s entitled" was $2,700,000, that "the amount of compensatory damages to which Victor Lesende [wa]s entitled" was $75,000, and "the amount of the punitive damages to which Mrs. Lesende [wa]s entitled to recover against Officer Borrero" was $850,000. (*Id.*)

The City thereafter moved for a new trial or, in the alternative, for remittitur from the jury's award of $2,700,000

11

in compensatory damages to Lesende.[5]  It argued that it was entitled to "a new trial on *damages* as a matter of law," but neither argued that it was entitled to nor suggested that it sought a new trial on liability.  (Suppl. App. 23 (emphasis added); *see also* Suppl. App. 20-24; Suppl. App. 26 (arguing that "a new trial on *damages* should be granted" (emphasis added)); Suppl. App. 28-31.)  It also argued in support of remittitur, comparing the facts presented and award granted in the first trial with the facts presented and awards granted in other excessive force cases.

On October 7, 2011, the District Court entered an order ("the 10-7-11 Order") and accompanying memorandum opinion, explaining its rationale for denying the City a new trial.  In an apparent overabundance of caution, the court couched its explanation in terms of both damages and liability.  *See Lesende*, 2011 WL 4765162, at *4, *8.  It correctly noted the inappropriateness of the City's request for a new trial on damages, explaining that "[a] jury award may not be overturned merely because it is an 'outlier' or finds damages in excess of what the court would have determined on its own."  *Id.* at *3.  It also found that the City "ha[d] offered no evidence that the [jury's] finding of liability was

---

[5] Following review of the City's motion and accompanying brief, the District Court concluded that the City did not challenge the jury's award of compensatory damages to Mr. Lesende.  *See Lesende v. Borrero*, No. 06-4967, 2011 WL 4765162, at *3 n.8 (D.N.J. Oct. 7, 2011).  That conclusion has not been challenged.

12

the result of 'passion or prejudice'" and concluded that any such argument would be rejected as "entirely assertionary." *Id.* at *4 (citations omitted).

However, the court granted the motion insofar as the City sought remittitur of the jury's award of compensatory damages to Lesende. After examining several awards in excessive force and malicious prosecution cases,[6] the court concluded that "[d]amages awards are highly fact-specific. Even among cases involving excessive force and malicious prosecution, prior verdicts are, at best, imperfect guides as to the range of reasonably acceptable jury verdicts." *Id.* at *6. Ultimately—based on the limited extent of Lesende's physical injuries and both the nature of the City's wrongdoing and "[t]he cumulative psychic effect of" its actions—the District Court concluded that Lesende's compensatory damages award was "only barely" excessive and remitted it from $2,700,000 to $750,000. *Id.* at *7. In so doing, it was mindful to inform Lesende that she could choose to either accept the remitted award or reject it and proceed to a new trial, which would be limited to determining the quantum of her compensatory damages.

---

[6] We commend the District Court both for noting that "[i]t would be particularly inappropriate to order a drastic remittitur based on the handful of decisions submitted by [the City]" and "not confin[ing] itself to the self-serving cases in [the City's] brief when great volumes of information exist[ed] on jury awards and settlements in excessive force and malicious prosecution cases." *Lesende*, 2011 WL 4765162, at *5.

13

Lesende moved for reconsideration of the order granting the City's motion, and her reconsideration motion was denied. She then timely rejected the remitted award.

## C.     The Second Trial

The second jury trial was held in September of 2012. Both the Lesendes and the City appeared and were represented by counsel. Officer Borrero neither appeared nor participated.[7] Following trial, the second jury found that Lesende was entitled to a $4,000,000 compensatory damages award.

---

[7] Officer Borrero may have been unaware of the second trial. On July 24, 2012, a notice appeared in the District Court's Case Management/Electronic Case Filing system ("CM/ECF") that the second trial would begin on September 11, 2012. That notice was electronically served to the parties through CM/ECF pursuant to the District Court's Local Civil Rule 5.2 and ECF Policies and Procedures. *See* DISTRICT OF NEW JERSEY ELECTRONIC CASE FILING POLICIES AND PROCEDURES (2012) ¶¶ 6 & 7, *available at* http://www.njd.uscourts.gov/sites/njd/files/PoliciesandProced ures2012.pdf. However, by July 24, 2012, Officer Borrero was acting *pro se* and had not registered to receive filed documents, including notices, electronically. *See id.* at ¶¶ (1)(a), (4). The record does not reflect that service was ever made directly on Officer Borrero pursuant to Local Civil Rule 5.1(a) and Federal Rule of Civil Procedure 5(b)(2).

14

The City timely moved for remittitur of the second jury's award, but it did not request a new trial. In fact, the City explicitly asked the District Court to "refrain from ordering a new trial on damages," arguing instead that "it would be in the best interests of all parties to permit an appeal to the Court of Appeals for the Third Circuit for review of both liability and damages, rather than order a third trial on damages only." (Suppl. App. 43.) It also "respectfully urge[d]" the District Court that "[i]n the event that remittitur [wa]s granted and [Lesende] reject[ed] the reduced sum . . . the matter be deemed final for purposes of appeal." (Suppl. App. 60.)

At argument on the City's motion, the District Court questioned the propriety of the City's request, and Lesende objected to the possibility that the District Court might grant a remittitur from the second jury's verdict without providing the opportunity to choose between a remitted award and a third trial on damages. As an alternative, the District Court suggested vacating the 10-7-11 Order and reinstating the first jury's verdict. This colloquy followed:

> THE COURT: [H]ave you any suggestion how we could put this in the posture for appeal other than my entering an order vacating the original remittitur order? . . . It doesn't go to the Third Circuit simply by you[r] saying so. The Third Circuit has to have jurisdiction, and I don't know how it would have jurisdiction if we're caught in the midst [] of a remittitur situation.

15

MR. KOBIN:  As your Honor suggested, you see the problem that I have with respect to this motion, if you were to deny this motion and reinstate the 2.7 million dollar verdict that came out the first time, we would lose our right to make arguments with respect to this second verdict that came out because I'm sure, from [Mrs.] Lesende's point, she wants the 4 million dollar verdict to stand.  As [to] the 2.7 million dollar [verdict], I don't know how that would work in terms of everything being appealable going to the Third Circuit if you were to deny this motion.

THE COURT:  Well, let's assume that I vacate the original remittitur order and have a judgment of two million seven, then each -- then you would appeal. . . .  But on the other hand, I don't see much point in going to another jury which would probably do the same thing.

MS. BENJAMIN:  Right.  Because, you know, if we go to another jury and they give less than 2.7 million dollars, I'm sure plaintiff will be filing [her] own motion, given what the other two verdicts w[ere].  Honestly, Judge, I'm at a loss because I don't want to lose -- us to lose any of our appealable rights with respect to the first and second trial.

THE COURT:  Well, the second trial becomes academic if we reinstate the first trial and reinstate that verdict.  That might be the way to go, and then everybody will have an

16

appealable decision . . . .  I think that maybe the solution is to vacate the original remittitur, which puts us back to where we were before you moved for remittitur the first time.  And the Court of Appeals will see my original thinking and -- but I'm not confronted with a second jury which comes in with a 4 million dollar verdict.  And as Mr. Kobin points out, we still rely on the jury system.  In the last analysis, it's the jury that has to decide the amount and not the Judge, so I can't just enter a judgment in an amount that I think is reasonable.  Well, I think then that's what I'll do.

MS. BENJAMIN:  Okay.

THE COURT:  So we can take it from there.  I'll deny the present motion and vacate the original remittitur order, and enter judgment for 2 million, seven hundred thousand.

(J.A. 792-94.)

The District Court's final order followed.  That order vacated the second jury's verdict, vacated the 10-7-11 Order, and reinstated the first jury's verdict in full.  This appeal and cross-appeal followed.

**II.**

The District Court had jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and, to the extent that the action concerned certain state-law claims that are not

17

at issue on appeal, 1367(a).  We have jurisdiction under 28 U.S.C. § 1291.

## III.

The City first asks us to consider two separate but related issues: whether (1) the evidence presented at trial was sufficient to support the jury's liability finding; and (2) the District Court erred by failing to order a new trial on liability. Lesende argues that the City waived both issues on appeal because it failed to raise the appropriate motions at trial under Federal Rules of Civil Procedure 50 and 59.  We agree. "'Generally, failure to raise an issue in the District Court results in its waiver on appeal.'"  *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed on below.").  "This general rule serves several important judicial interests," including "protecting litigants from unfair surprise, promoting the finality of judgments and conserving judicial resources, and preventing district courts from being reversed on grounds that were never urged or argued before it."  *Webb*, 562 F.3d at 263 (citations, internal quotation marks, and alterations omitted).

As noted above, the City did not move for judgment as a matter of law pursuant to Rule 50(a).  Because it did not raise such a motion, it "wholly waive[d] the right to mount any post-trial attack on the sufficiency of the evidence." *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 (3d Cir.

18

1991); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400-04 (2006). Indeed, "its failure to do so operates as a waiver with fatal consequences to its insufficiency of the evidence claim in this appeal." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999).

The City argues that it preserved its challenge to the sufficiency of the evidence by timely requesting a new trial on liability in the post-trial motion filed after the first trial concluded. We find the City's argument unavailing. Neither the City's notice of motion nor the accompanying brief indicate that the City sought a new trial on liability. To the contrary, those papers indicate that the City, insofar as it sought a new trial, only sought a new trial on the compensatory damages awarded to Lesende. Accordingly, they were incapable of preserving the issue for appeal. *Cf. Monteagudo v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*, 554 F.3d 164, 175-76 (1st Cir. 2009) (rejecting defendant's contention that certain issues were preserved by post-trial motion seeking either a new trial or remittitur where motion papers did not contain any related "developed argumentation" or relevant citations). "Theories not raised squarely in the district court cannot be surfaced for the first time on appeal. . . . [I]f a claim is merely insinuated rather than actually articulated, that claim ordinarily is deemed unpreserved for purposes of appellate review." *Id.* at 176 (citations, internal quotation marks, and alterations omitted).

Three findings support our conclusion. First, the language used in both the notice of motion and accompanying

19

brief belie the City's contention that it sought a new trial on liability. The notice of motion states only that the City sought "a new trial pursuant to *Fed. R. Civ. P.* [sic] 59 as a matter of law." (Suppl. App. 16-17.) But the supporting brief makes clear that the City sought only "a new trial on *damages*." (Suppl. App. 26 (emphasis added); *see also* Suppl. App. 23 (stating in title of subsection presenting legal argument that "Defendant City of Newark is Entitled to a New Trial on *Damages* as a Matter of Law" (emphasis added)); Suppl. App. 31 ("If the court is not inclined to grant a new trial *on damages*, in the alternative, a remittitur . . . should be granted.").)

Second, the City's "Statement of Facts" does not address any facts that might have influenced the District Court's decision not to grant a new trial on liability. Instead, those paragraphs merely detail the evidence offered at the first trial to support Lesende's prayer for compensatory relief. They do not and cannot be construed to relate to any City customs, policies, or practices that would either support or undermine a finding of liability under Section 1983 and *Monell*.

Finally, the City's argument before the District Court belies the argument raised on appeal. The brief filed in support of the City's motion recognized that the District Court could grant a new trial as a matter of law on several bases, including: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; [or] substantial errors were made in the admission or rejection of evidence or the giving or refusing of instructions." (Suppl.

20

App. 23.) It then set forth the body of law related to excessive damage awards but failed to set forth any argument that the first jury's verdict on liability was against the clear weight of the evidence. The absence of such argument strongly indicates that the City did not intend to seek and never actually sought a new trial on liability from the District Court.

These same three points cut against the City's argument that we may now assign error to the District Court for not ordering a new trial on liability. The City's failure to seek such relief from the District Court results in the waiver of that issue on appeal. *See Singleton*, 428 U.S. at 120; *Webb*, 562 F.3d at 263; *see also Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal." (citation and internal quotation marks omitted)).

The City alternatively argues that the issue at hand— i.e., the propriety of a new trial on its liability—was preserved by the District Court's *sua sponte* consideration and discussion of that issue in the memorandum opinion that accompanied the 10-7-11 Order, pursuant to Rule 59(d). The first and second sentences of Rule 59(d) grant the District Court power to order a new trial on its own accord under two circumstances: first, "for any reason that would justify granting one on a party's motion" if the court enters its order within twenty-eight days of the entry of judgment; and second, "[a]fter giving the parties notice and an opportunity

21

to be heard, . . . for a reason not stated in the motion." FED. R. CIV. P. 59(d).

It matters not whether the District Court's discussion and, ultimately, rejection of the prospect of a new trial on liability arose under the first or the second sentence of Rule 59(d). As applied here, it is a distinction without difference; the end result is the same. Because the District Court failed to enter its memorandum opinion within twenty-eight days of the entry of judgment,[8] it lacked jurisdiction under the first sentence of Rule 59(d) to consider the propriety of a new trial on liability on its own accord. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 717 (3d Cir. 2010) (discussing *Demeretz v. Daniels Motor Freight, Inc.*, 307 F.2d 469 (3d Cir. 1962)); *Tarlton v. Exxon*, 688 F.2d 973, 978 (5th Cir. 1982); *Chi. & N. W. Ry. Co. v. Britten*, 301 F.2d 400, 402-03 (8th Cir. 1962).[9] Further, because the record demonstrates that the District Court neither provided notice to Lesende that it would consider that issue nor gave her an opportunity to be heard on it, the District Court lacked power to grant the City

---

[8] Judgment was entered on June 28, 2011. The District Court entered the memorandum opinion at issue over 100 days later, on October 7, 2011.

[9] *Demeretz* was decided prior to the 2009 amendment to Rule 59(d), which extended the time for *sua sponte* action by the District Court from ten to twenty-eight days. It nevertheless retains its precedential value, and it accordingly guides us now.

22

relief under the second sentence of Rule 59(d). *See Valtrol, Inc. v. Gen. Connectors Corp.*, 884 F.2d 149, 155-56 (4th Cir. 1989) ("The notice requirement may not be ironclad, but the rule clearly contemplates notice in the ordinary case." (citations omitted)).

Because the District Court did not comply with the jurisdictional and procedural aspects of Rule 59(d), it lacked power to *sua sponte* consider the propriety of a new trial. Accordingly, the court's discussion of that issue did not preserve it for appeal. This conclusion accords with well-settled waiver principles and serves the judiciary's interest in promoting the finality of judgments and preventing reversal on grounds that were not argued below.

## IV.

The City next argues that the District Court erred because it failed to instruct the jury to apportion Lesende's compensatory damages award between it and Officer Borrero. It appears from the City's briefing on this matter that the alleged error rose in the first trial. In any case, we disagree that the lack of instruction was legal error.[10]

Federal Rule of Civil Procedure 51 provides that a party objecting to either a jury instruction or the lack of an

---

[10] We would reach the same conclusion, albeit for slightly different reasons, had the City argued that the error rose in the second trial.

23

instruction must raise the objection "on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1). Such an objection must be both cogent and specific to the alleged error. *See Palmer v. Hoffman*, 318 U.S. 109, 119 (1943) ("In fairness to the trial court and to the parties, objections to a [jury] charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial."); *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 993 (3d Cir. 1996). As a general rule, a party who fails to either cogently raise a specific objection or state the grounds of the objection at trial waives related arguments on appeal. *See Waldorf v. Shuta*, 896 F.2d 723, 739 (3d Cir. 1990). "The requirement that we consider only those objections to jury instructions that were raised before the district court reflects the 'policy that an appellate court will not predicate error on an issue upon which the district court was not provided with an opportunity to rule.'" *Id.* (quoting *Remington Rand Corp. v. Bus. Sys., Inc.*, 830 F.2d 1260, 1267 (3d Cir. 1987)).

The City raises two arguments on the lack of an apportionment instruction that we must now address. It first argues that it raised a clear objection to the lack of an apportionment instruction during the first trial. Following careful review of the record, we disagree. During that trial, Lesende moved for a directed verdict against Officer Borrero, and her motion was granted. The City then raised some

24

concern over the jury's verdict sheet, stating its opinion that "[t]here needs to be [] separate damages for Officer Borrero then, and one for the City of Newark." (J.A. 572.) But it appears inarguable that the City's objection was not clear and cogent, that it was not sufficiently specific, and that it failed to state the grounds upon which it rested.

We find support for this conclusion in both Lesende's and the District Court's respective responses to the City's suggestion regarding "separate damages." That suggestion prompted only a brief discussion on tangentially related issues, i.e., liability and punitive damages. Had the City cogently presented its argument, as it has on appeal, then logic and common sense dictate that either Lesende or the District Court, or both, would have recognized and directly responded to the City's concern. At the very least, we are hard-pressed to believe that the District Court would have responded only by way of *non sequitur*.

Further, we find analogous support in our precedent. In *Chemical Leaman Tank Lines*, *supra*, we held that an objection to jury instructions was waived where an objection was not presented "with sufficient clarity to give the trial judge notice of a possible error in the instruction." 89 F.3d at 993. "Not only was the objection difficult to understand because of its convoluted grammar, but the objection did not specify the authority upon which it was based. Therefore . . . [it] failed to comply with Rule 51's requirement that an objection 'stat[e] distinctly . . . the grounds of the objection.'" *Id.* (alteration in original) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

25

It follows from our discussion in *Chemical Leaman Tank Lines* that we should here, too, conclude that the objection at issue was not raised through sufficiently clear argument. We are mindful that a contrary conclusion might leave erudite trial judges "to do counsel's work, creat[ing] the ossature for the argument, and put[ting] flesh on its bones." *Zannino*, 895 F.2d at 17. Any circumstance that leaves district judges responsible for the resolution of inarticulate, incomprehensible, or otherwise unsupported objections is untenable. As recognized in another context, "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Id.* (citation and internal quotation marks omitted).

The City has alternatively asked us to examine the lack of an apportionment instruction for plain error. *Cf.* FED. R. CIV. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."). "Under the plain error standard, we consider, *inter alia*, the obviousness of the error, the significance of the interest involved, and the reputation of judicial proceedings if the error stands uncorrected." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 340 (3d Cir. 2005) (citations and internal quotation marks omitted). Such "review is discretionary—it should be exercised sparingly and should only be invoked with extreme caution in the civil context." *Id.* (citation and internal quotation marks omitted).

26

The City contends that the lack of apportionment instruction resulted in plain error because the City was held jointly and severally liable for Lesende's compensatory damages under the theory of *respondeat superior*. If the City's liability was premised on that theory, then we could find some weight in its argument. However, the jury made a separate finding that the City's liability stemmed from its own unconstitutional policy or custom, in accord with Section 1983 and *Monell*. That finding defeats any inference that the lack of an apportionment instruction caused the jury to not consider the City's liability, separate and apart from that of Officer Borrero.

Upon our review of various *Monell* actions, it at least appears plausible that the City could have been held jointly and severally liable with Officer Borrero. *See DiSorbo v. Hoy*, 343 F.3d 172, 181-82 (2d Cir. 2003) ("[T]he City is at a minimum jointly and severally liable for compensatory damages pursuant to its liability under *Monell*."); *Berry v. City of Detroit*, 25 F.3d 1342, 1348 (6th Cir. 1994) (stating that "pursuant to the Supreme Court's holding in *Monell*, there is no *respondeat superior* liability as to municipalities" but concluding that a City as "master" may be held liable "for the tort of the servant" if the jury "goes through the 'custom or policy' analysis and ties in a city in that manner"); *White-Ruiz v. City of New York*, 983 F. Supp. 365, 390-96 (S.D.N.Y. 1997) (finding that both police officers who violated Section 1983 and city found liable under *Monell* were jointly and severally liable); *cf. Quinn v. Fresno Cnty. Sheriff*, No. 10-1617, 2012 WL 6561562, at *2 n.3 (E.D. Cal. Dec. 14, 2012) (concluding that county could not be held jointly and

27

severally liable because plaintiff neither alleged nor prevailed on a *Monell* claim), *recons. granted on other grounds*, 2013 WL 898136 (Mar. 8, 2013). It thus appears that the proper course—that is, the proper jury instruction—was unclear under current law. In that circumstance, there can be no finding of plain error. *See Collins v. Alco Parking Corp.*, 448 F.3d 652, 657 (3d Cir. 2006) (citing *Franklin Prescriptions*, 424 F.3d at 343).[11]

## V.

The most concerning issue raised to this Court is the issue highlighted by both Lesende and the City: the District Court's vacatur of the second jury's verdict, vacatur of the 10-7-11 Order, and reinstatement of the first jury's verdict.

We are concerned, in part, because both Lesende and the City invited the very error that they complain of on appeal. They have thus invoked our consideration of the invited error doctrine. "The doctrine of 'invited error' refers to '[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling.'" *Lima v. Newark Police Dep't*, 658 F.3d 324, 333 n.2 (3d Cir. 2011) (quoting BLACK'S LAW DICTIONARY 622 (9th ed. 2009)). "That is to say, '[w]hen a litigant takes an unequivocal

---

[11] Because we are bound by the plain error standard of review, it is of no consequence that this Court has yet to rule on the issue, and we do not do so now.

position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession.'" *Id.* (alteration in original) (quoting *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116-17 (3d Cir. 1992)); *see also Morrow v. May*, 735 F.3d 639, 644 (7th Cir. 2013) (equating invited error "with the adage that turnabout is fair play").

Before us, the City argues that the District Court improperly "derive[d] [a] remedy" consisting of "procedural maneuvering" that "create[d] appellate jurisdiction and . . . avoid[ed] a fully-warranted third trial." (City Br. at 2, 6; *accord* City Br. at 22-23 ("[T]o avoid a third trial and make sure that an order was appealable to the jurisdiction of this Court, the trial court concocted a remedy . . . ."); *see also* City Br. at 28 (faulting the District Court for actions that "were not based upon the merits or for justice, but because the court was attempting to avoid a third trial and trying to create jurisdiction for appeal," and arguing that "[t]hose factors improperly influenced the trial court's decision making process").) That is a totally inappropriate mischaracterization of the District Court's actions. When moving for remittitur of the second jury's verdict, the City explicitly asked the District Court to enter an order reducing the jury's award of compensatory damages, "refrain from ordering a new trial on damages," and ensure that "the matter be deemed final for purposes of appeal." (Suppl. App. 43, 60.)

Lesende, too, participated in the creation of the scheme of which she now complains. At oral argument on the City's

29

motion, she argued that the City's request, if granted, would deprive her of her Seventh Amendment right to a conditional remittitur—that is, one that afforded her the opportunity to choose between the remitted award and a new trial on damages. *Cf. Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211-12 (1998) (per curiam); *Cortez*, 617 F.3d at 716. She could and perhaps should have rested on that argument. Instead, however, she at least tacitly approved the proposed vacatur of the second verdict and reinstatement of the first verdict. At oral argument, her attorney conceded that he did not object to that scheme because he believed that Lesende would accept a judgment that awarded her $2,700,000 in compensatory damages.

On these bases, we are disinclined to afford relief to either the City or Lesende. The City assumed a tactical stance, which it hoped would reduce the second jury's award of $4,000,000 to as little as $750,000—the remitted sum offered to Lesende after the first trial. In so doing, it concocted the very procedural scheme of which it now complains, one that would afford it great benefit while circumventing Lesende's Seventh Amendment right to a new jury trial on damages. Lesende, for her part, assumed a tactical position that was both complimentary and contradictory to the City's position, obviating the need for a new trial while ensuring that she would receive $2,700,000 rather than some other lesser amount (e.g., $750,000). Because neither party has clean hands, equity counsels against granting either of these parties the relief that they seek on appeal.

30

Our inquiry, under normal circumstances, would end with our finding of invited error.[12]  But we are concerned by the vacatur of the 10-7-11 Order insofar as the District Court stated, without explanation, that the 10-7-11 order was "improvidently entered." (J.A. 4.)  In the wake created by the absence of a meaningful explanation, we are constrained to conclude that the vacatur of the 10-7-11 order was, as invited by the City and Lesende, prompted by desire to resolve the City's motion while contemporaneously avoiding a new trial on damages and immediately vesting this Court with appellate jurisdiction.

Those factors, whether considered individually or in sum, were not a proper basis for revisiting and vacating the 10-7-11 order.  And, ultimately, the District Court's consideration of those factors led it to violate the doctrine of law of the case—"an amorphous concept" that "directs a court's discretion" but "does not limit [its] power." *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) (citation and internal quotation marks omitted); *accord In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).  Pursuant to that doctrine, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in

---

[12] Certain recognized exceptions to the invited error doctrine do not apply here.  *See, e.g.*, *United States v. Maury*, 695 F.3d 227, 257 (3d Cir. 2012) (appellant may argue that its proposed jury instructions were erroneous in light of subsequent, retroactively applied appellate rulings), *cert. denied sub nom. Atl. States Cast Iron Pipe Co. v. United States*, 133 S. Ct. 1600 (2013).

31

any circumstance." *In re Pharm. Benefit Antitrust Litig.*, 582 F.3d at 439 (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)).  But "'courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'"  *Id.* (quoting *Christianson*, 486 U.S. at 816); *accord Pepper*, 131 S. Ct. at 1250; *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

The District Court did not explain how or why its earlier decision was improvidently granted, and, on appeal, we cannot find a basis for concluding that it was clearly erroneous.  To the contrary, we find the District Court's earlier decision to be well-rooted in both law and fact.  We are thus forced to conclude that the 10-7-11 Order was not "improvidently entered," and, similarly, we are forced to conclude that the District Court abused its discretion by revisiting and vacating that order.

## VI.

For the forgoing reasons, we will affirm on all issues other than those concerning the District Court's final order, which was entered on February 21, 2013, and, *inter alia*, vacated the order entered on October 7, 2011.  We will vacate the District Court's final order with instructions to reinstate the second jury's verdict and resolve the City's related motion for remittitur on its merits.  If the District Court grants that motion, then it should be mindful to preserve Lesende's right to choose between a remitted award and a third trial on her compensatory damages.  Further, for the reasons discussed in

32

footnotes 2 and 7, *supra*, we suggest that the District Court take whatever efforts it deems reasonable to ensure that Officer Borrero is notified of subsequent proceedings.