NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2074
_____

DOW CHEMICAL CANADA, INC.,
on its own behalf and as assignee
of The Dow Chemical Company;
THE DOW CHEMICAL COMPANY

v.

HRD CORPORATION,
d/b/a
MARCUS OIL & CHEMICAL,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D. DE. 1-05-cv-00023)
District Judge:  Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2014

Before:  FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: October 14, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

HRD Corporation ("HRD") appeals from four orders of the United States District Court for the District of Delaware: a grant of summary judgment in favor of Dow Chemical Canada, Inc. and The Dow Chemical Company (collectively "Dow") on breach of contract claims and counterclaims; a denial of HRD's motion to reopen discovery; a denial of HRD's motion for reconsideration of the earlier grant of summary judgment; and a grant of summary judgment in favor of Dow with respect to HRD's remaining counterclaims for breach of contract and misappropriation of trade secrets. We will affirm all four of the District Court's orders and its final judgment.

I.

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

On July 1, 2002, Dow and HRD entered into an agreement to jointly develop customized polyethylene wax ("PE Wax") products according to a written Joint Development Agreement ("JDA"). The JDA called for a confidential and exclusive relationship. Dow was to conduct the research and development of the PE Wax products,

2

with HRD to share the costs. The JDA allocated ownership of intellectual property to the parties according to certain defined criteria.[1]

Once the JDA's developmental goals were met, the parties entered into the commercial phase of their relationship on February 28, 2003, governed by the Supply Agreement ("SA"). The SA called for Dow to exclusively supply HRD with PE Wax for approximately four years. With input from the Supply Chain Team ("SCT")—a group comprised of Dow and HRD representatives—the parties incorporated product specifications into the SA.

Once Dow began to supply HRD with wax products, however, HRD alleged that the product delivered was not "Prime Product," as required by the SA. HRD refused to accept further deliveries and ceased payment. Dow filed suit for breach of contract. HRD answered with counterclaims. The District Court ruled as set forth above. This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332. We exercise jurisdiction over the District Court's final orders under 28 U.S.C. § 1291.

---

[1] With respect to the allocation of intellectual property arising from the development process, the JDA provided that HRD would own: "(1) products made from or containing [PE Waxes], (2) process [sic] for making products made from or containing [PE Waxes], and/or (3) methods of use of [PE Waxes.]" App. 273. Dow would own all other developments. The parties agreed to exchange descriptions of potential developments to determine ownership and to coordinate subsequent patent filings.

III.

A.

We review the District Court's September 24, 2009, summary judgment order *de novo*. *Estate of Thouron v. United States*, 752 F.3d 311, 313 (3d Cir. 2014).

On appeal, HRD argues that summary judgment was improper because triable issues of fact exist with respect to whether: (1) the SA allowed the SCT to informally amend the specifications for Prime Product; (2) the SCT did, in fact, informally amend the Prime Product specifications to limit "volatiles" to "one thousand parts per million"; and (3) Dow failed to deliver Prime Product adhering to the SCT's amended specifications, in violation of the SA.

Dow argues that HRD waived its SCT amendment theory on appeal because it did not raise it squarely before the District Court. We agree with Dow.

To preserve an issue for appeal, HRD must have "unequivocally put its position before the [District Court] at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999). "A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal . . . ." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009).

4

In the District Court, HRD argued principally that two SA terms defining "PE Wax"[2]—"Mn" and "$T_m$"—expressly limited the concentration of "light ends" or "volatiles" allowed in Prime Product. The District Court rejected HRD's argument, and HRD does not challenge that rejection on appeal.

Instead, HRD contends on appeal that the SCT amended the SA. It first vaguely alluded to this as an alternative argument in its summary judgment reply brief. D.I. 271 at 6–9. There, HRD reiterated its principal argument regarding the express definition of "PE Wax," but hedged by stating that if the District Court deemed the SA ambiguous, it would introduce extrinsic evidence to support its interpretation of the terms "Mn" and "$T_m$." Conspicuously absent from HRD's District Court reply brief, however, is any explicit assertion that the SCT amended the SA to limit "volatiles."[3] "Theories not raised squarely" in the District Court "cannot be surfaced for the first time on appeal." *Lesende v. Borrero*, 752 F.3d 324, 333 (3d Cir. 2014) (internal quotation marks omitted) (noting that claims merely insinuated rather than actually articulated are waived on appeal).

Based upon these circumstances, we find that HRD waived its SCT amendment theory on appeal. Furthermore, finding no "compelling circumstances" requiring consideration of HRD's SCT amendment theory, we decline to exercise our discretion to

---

[2] The SA defined "PE Wax" as "Metallocene ethylene homopolymers and copolymers having a Mn within the range of 600–9000, a density > 0.900g/cc, and $T_m$ above 50°C." App. 292.

[3] Only in its motion for reconsideration did HRD set forth its SCT amendment theory in full. But that was too late—both for the District Court and this Court.

5

consider it on appeal. *Shell Petroleum, Inc.*, 182 F.3d at 219. HRD does not raise any alternative grounds for reversal. We will therefore affirm the District Court's September 24, 2009, summary judgment order.


B.

We review the District Court's November 5, 2012, denial of HRD's motion to reopen discovery for abuse of discretion. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 235 (3d Cir. 2007).

On appeal, HRD argues that the District Court abused its discretion by refusing to reopen discovery with respect to its counterclaims for misappropriation of trade secrets and breach of the JDA on certain Dow patent filings. We disagree.

In response to HRD's broad production request for patents and patent applications related to wax products, Dow reasonably sought to limit the scope of HRD's request to wax products "made from or containing [PE Wax]," as defined by the JDA. The parties disputed the meaning of "made from or containing" PE Wax. HRD's interpretation relied, in part, not upon objective criteria verifiable through scientific testing, but upon whether Dow employees "knew" the product would contain PE Wax. The District Court rightly found that HRD's interpretation "ma[de] no sense," observing that:

> It is hardly believable that two chemical companies would agree to define a chemical product according to what employees of one party [i.e., Dow] subjectively knew. If the product contains a [PE Wax], it should be scientifically verifiable through testing. If a product does not contain a [PE

Wax], it cannot be made to contain a [PE Wax] by a Dow employee thinking it does.

*Dow Chem. Can. Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012). The District Court adopted Dow's interpretation, and Dow produced fourteen patent applications.

HRD, nevertheless, reasserted that Dow failed to comply with its request based upon HRD's independent search uncovering undisclosed patent applications allegedly fitting the District Court's criteria. The District Court rejected HRD's argument, finding that none of the applications which HRD cited related to wax products "made from or containing [PE Wax]," under the JDA. The District Court refused to reopen discovery.

We find no indication in the record that the District Court abused its broad discretion to manage discovery in this case. *See, e.g.*, *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1237 n.4 (3d Cir. 1993). The record demonstrates that after the District Court carefully examined the patent applications at issue, it found that they fell outside the ambit of the JDA and, thus, Dow's production obligations. Because we find no clearly erroneous conclusions of law or fact in these findings, we will affirm the District Court's November 5, 2012, order denying HRD's motion to reopen discovery.

C.

We review the District Court's December 17, 2012, denial of HRD's motion for reconsideration for abuse of discretion. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).

7

On appeal, HRD argues that the District Court abused its discretion by declining to reconsider summary judgment in favor of Dow on HRD's counterclaim for breach of the JDA in light of HRD's discovery of undisclosed patent applications allegedly falling within Dow's discovery obligations. In so doing, HRD merely repurposes arguments propounded in support of its motion to reopen discovery.

The District Court concluded—and we will affirm its conclusion—that none of the patent applications which HRD cited fell within the ambit of the JDA and, thus, Dow's production obligations. We find no indication here that the District Court abused its discretion in concluding that HRD was not unfairly prejudiced by Dow's discovery disclosures. We, therefore, affirm the District Court's December 17, 2012, denial of HRD's motion for reconsideration.

D.

Finally, we review the District Court's December 18, 2012, summary judgment order *de novo*. *Estate of Thouron*, 752 F.3d at 313.

On appeal, HRD argues that summary judgment was improper because: (1) the District Court misconstrued the JDA's allocation scheme with respect to intellectual property developments; and (2) a genuine issue of material fact exists with respect to whether HRD owned two of Dow's patent applications. We disagree.

First, HRD argues on appeal that because the JDA contemplates an "exclusive" business relationship, *any* developmental work related to PE Wax conducted during the

8

contractual "Activity Period" constituted a JDA Development. The JDA, however, plainly defines a Development as "any invention" related to PE Wax "*first* actually reduced to practice . . . *both* during the Activity Period *and* as a result of work performed in connection with this JDA." App. 281 (emphasis added). Absent textual ambiguity, Delaware courts effectuate the intent of contracting parties by according the contractual language the ordinary meaning a reasonable person in the position of the parties would have thought the words meant. *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1228 (Del. 2012). We agree with the District Court that HRD's interpretation of "Development" is unreasonable in light of the JDA's plain language.

Second, to prove ownership and to survive Dow's motion for summary judgment, HRD was required to adduce evidence from which a rational trier of fact could conclude that the two developments were reduced to practice as a result of work performed in connection with the JDA. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The District Court concluded—and we agree—that HRD failed to make this showing.

In support of its motion for summary judgment, Dow presented the affidavit of Dr. Teresa P. Karjala, a named inventor with respect to both patent applications. Karjala declared that she was familiar with the scope of the JDA project and the subject matter of the patent applications. She declared that none of the work disclosed in either patent

9

application was performed in connection with the JDA.[4] Dow submitted evidence that the first patent application is a continuation-in-part of an earlier patent application filed by inventors who never worked on the JDA. Dow submitted an Excel spreadsheet recording the names and hours of each Dow employee who worked on the JDA, as well as a list of the named inventors for the second patent application. There was no overlap between the two groups. We agree with the District Court that Dow carried its burden as the movant under Rule 56 of the Federal Rules of Civil Procedure and shifted the burden to HRD to adduce evidence demonstrative of more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56 (requiring a genuine dispute as to any material fact).

The District Court held—and we agree—that HRD failed to carry its burden under Rule 56. HRD submitted an email between Dow personnel allegedly referring to technology underlying the patent applications and connected to the JDA. The District Court correctly concluded that the email failed to connect the technology to work done on the JDA project, as required by the JDA's definition of a "Development."[5] HRD

---

[4] That Karjala's declaration was "self-serving," as alleged by HRD, is of no consequence for purposes of Rule 56 of the Federal Rules of Civil Procedure. We do not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

[5] The email expressly stated that the technology discussed was "a great departure from the project we have with HRD as defined by the scope of the [JDA]." As noted by the District Court, this alone renders the email insufficient to carry HRD's burden under Rule 56.

presented no other evidence.  We will therefore affirm the District Court's December 18, 2012, summary judgment order.

IV.

For these reasons, we will affirm all four of the District Court's orders and the final judgment.